**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: craig@nicholaslaw.org
Email: alex@nicholaslaw.org

**PHELPS LAW GROUP**
Marc Phelps (SBN 237036)
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 629-2533
Facsimile: (949) 629-2501

**THE CARTER LAW FIRM**
Roger R. Carter (SBN 140196)
Bianca A. Sofonio (SBN 179520)
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 245-7500

Attorneys for Plaintiff David Martinez and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DAVID E. MARTINEZ on behalf of himself and all others similarly situated,

Plaintiffs,

v.

AGODA COMPANY PTE. LTD, a Singapore Private Limited Liability Company; AGODA INTERNATIONAL USA, INC., a Delaware Corporation,

Defendants.

Case No. 3:20-cv-01289-JAH-MSB

**AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**

1. **VIOLATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200,** *ET. SEQ.*

2. **VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500,** *ET. SEQ.*

3. **VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17501;**

4. **BREACH OF CONTRACT**

5. **BREACH OF EXPRESS WARRANTY**

6. **UNJUST ENRICHMENT/QUASI CONTRACT**

**DEMAND FOR JURY TRIAL**

Date of Filing of Action in the Superior Court: June 3, 2020

Date of Removal of Action: July 9, 2020

AMENDED CLASS ACTION COMPLAINT

Plaintiff Edward Martinez brings this action on behalf of himself and all others similarly situated against Defendants (collectively, "Agoda") and states as follows:

## NATURE OF ACTION

1.     This is a consumer protection class action arising from Defendants' false advertising, through its "Agoda" branded travel website and app, of (1) phantom "discounts" on rates for hotel rooms and (2) a false urgency through fake deadlines by which the fake discounts will allegedly expire, as well as faked popularity and scarcity of those discounted rooms.  Defendants operate the agoda.com website and the Agoda smart device app and are responsible for the deceptive conduct described in this complaint.

2.     With respect to rates, Defendants have a uniform policy and practice of claiming fake discounts.  Agoda does this by, among other ways, expressly claiming that rooms are "discounted" and by listing an arbitrary and fake base price (which it calls the "original price"), which purports to be the price at which the room is ordinarily rented to consumers.  The fake original prices are in fact significantly higher than the true prices at which the rooms are ordinarily rented.  Based on this fake original price, Agoda then lists a discount or sometimes "percentage off" that the current price of the room represents.  This creates the misleading impression in the mind of the consumer that they are getting a good deal on the room. In fact, the overwhelming majority of rooms offered are never, or almost never, rented at anything but Agoda's stated (final) price.  Any reference to a different "original" price, furthermore, is fake.  Agoda omits this detail.

3.     With respect to urgency, Defendants, first, falsely state that the "discounted" rate is only available for a very limited time, such as "TODAY," when in fact such rates are available longer.  Defendants also routinely claim that there are only a limited number of rooms left.  These statements—totally made up by Defendants —are made with great specificity to increase their believability.  For

example, Agoda frequently states not just "one room left," but also makes notations such as "three rooms left" or "five rooms left."  In fact, Agoda's representations of the number of rooms left are demonstrably false in almost all instances. Agoda knows but fails to disclose that Agoda is just one of many platforms on which these hotel rooms are sold, so it cannot possibly ascertain exactly how many rooms are left in real time. Moreover, the number of rooms actually left is constantly in a state of flux based on reservation volume, room block/group rate reservations, projections, cancellations, and the amount of rooms held back by the hotel – data points that are not accessible to Agoda, a third party.  Agoda's claims that there are just a handful of rooms left at gargantuan properties with 1000 rooms or more are debunked by a quick visit to the hotel and inquiry at the reservations desk. They are also debunked by current events.  For example, Agoda forgot to adjust its marketing scheme for the COVID-19 pandemic and kept claiming that its properties were almost full (or only had a few rooms "left") even though, in reality, the hotels were nearly empty due to the pandemic.

4.    All the above described statements and omissions are false, misleading, and/or likely to deceive the reasonable consumer. Because the discount is fabricated and any purported original prices are much higher than the actual price at which the room is normally sold, the allegedly valuable discount is wholly illusory and is simply a sales tactic deployed by Defendants to induce a sale.  Meanwhile, by listing an arbitrary low number of rooms left and indicating that the discounted rate is valid only "TODAY," Defendants also create false senses of urgency as an added sales tactic.

5.    These deceptive policies and practices were, and continue to be, consistently and uniformly deployed by Defendants on their agoda.com website and Agoda mobile app and serve as Defendants' primary method of selling hotel rooms to consumers and gaining a foothold for competitive success versus their rivals.

6.     Consumers suffer harm and lose money due to Defendants' misrepresentations.  Consumers pay more than they should or would have for the rooms and for the service including because Defendants charge a fee for the use of their platform that consumers would not have to pay should they book their room via a different source, such as directly through the hotel.

7.     By advertising these fake discounts, including fake original prices and percentages off, and falsely listing the number of rooms available and that the deals are only valid for a limited time, Defendants have violated numerous consumer protection laws, common laws, and equitable principles as detailed herein. In fact, federal regulations, as well as the consumer protection laws of California, expressly prohibit the advertising of fake former prices, "phantom" price reductions, and deceptive claims of percentage-off discounts which are based on inflated, fictitious "regular" prices. *See, e.g.*, 16 C.F.R. Section 233.1; *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013) ("Because such practices are misleading – and effective – the California legislature has prohibited them").  Moreover, the United Kingdom's Competition Markets Authority[1] has already censured Agoda for these same tactics, recently forcing Agoda and its sister companies to stop these practices in the U.K.

8.     Plaintiff is one of Defendants' victims.  He brings this action on behalf of himself and all other similarly situated consumers in the U.S. to halt Defendants' dissemination of false and misleading advertising messages, correct the false and misleading perception those messages have created in the minds of consumers, and to obtain redress for those who have reserved hotel rooms from or through Defendants in reliance on these messages.

---

[1] The CMA is the U.K. Government's agency in charge of protecting citizens from unfair and deceptive business practices and anticompetitive behavior.  It is like our FTC.

**JURISDICTION AND VENUE**

9.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, including under the Class Action Fairness Act.   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different States.  Also, the matter or controversy is a putative class action with over 100 class members and with over $5 million in controversy.  Defendant Agoda Pte. Ltd has also affirmatively consented to the jurisdiction of this Court.

10.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. Section 1391(b) through (d), because Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District; do substantial business in this District; and are subject to personal jurisdiction in this District.  Plaintiff resides and has resided in this District at all times relevant.  Defendant Agoda Pte. Ltd has also affirmatively consented to this Court as the proper venue for this dispute.

11.     This Court has jurisdiction over all Defendants because, upon information and belief, they are either citizens of California, are registered to do business in California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.  Also, Defendant Agoda Pte. Ltd has affirmatively consented to the jurisdiction of this Court.

12.     No agreement to arbitrate claims existed under the terms and conditions of the transactions applicable to Plaintiff on Defendants' platform.

**PARTIES**

13.     Plaintiff David E. Martinez is and was at all relevant times an individual residing in California who was lured in by Defendants' false advertising and reserved one or more hotel rooms in reliance on it, during the Class Period. Due to Defendants' false and misleading messages, Plaintiff was misled into believing

AMENDED CLASS ACTION COMPLAINT

that he was getting bargains on popular hotels that were available only for a limited time and he reserved the rooms with Defendants in reliance thereon. Defendants' marketing and advertising tactics were a significant inducement for Plaintiff's purchases.  Had Plaintiff known the truth about Defendants' misrepresentations and omissions, he would have paid less money, searched for a different platform charging a lower fee, and/or saved money by making his reservations directly through the hotel. As a result of reserving through Defendants' Agoda platform, Plaintiff suffered injury in fact and lost money. Plaintiff is not claiming physical harm or seeking recovery of personal injury damages.

14.     Defendant Agoda Pte. Ltd is a Singapore private limited liability company doing business in California and throughout the U.S.  It is a wholly owned subsidiary of non-party Booking Holdings, Inc. – a large for-profit publicly traded corporation incorporated in Delaware and headquartered in Norwalk, Connecticut (NASDAQ: BKNG).   Defendant Agoda Pte. Ltd, along with various sister companies or affiliates, operates the travel fare aggregator and travel fare search or metasearch engine at agoda.com.  Defendant also provides the same products or services – using the same advertising tactics – through its smart apps, like the Agoda app widely available through the Apple App Store, the Google Play store, and other popular platforms.

15.     Defendant Agoda International USA, Inc. is a Delaware corporation doing business in California and throughout the U.S.  It is a sister-company to co-Defendant Agoda Pte. Ltd and it is another wholly owned subsidiary of non-party Booking Holdings, Inc. With Agoda Pte. Ltd., Defendant Agoda International operates the travel fare aggregator and travel fare search or metasearch engine at agoda.com.  Agoda International also provides the same products or services – and using the same advertising tactics – through its smart apps, like the Agoda app widely available through the Apple App Store, the Google Play store, and other popular platforms.  Upon information and belief, Defendants work together to

acquire accommodations at wholesale prices from partner properties and resell them to consumers via their websites and mobile apps at a mark-up.

16.     Throughout the Class period, Defendants have owned, operated, and managed the Agoda brand and the related agoda.com website and mobile app. Defendants, either themselves or with the help of various sister companies, parent companies, subsidiaries, or joint venturers, created and disseminated the advertising messages, policies, and procedures described herein and, at all times during the relevant class period, participated in, endorsed, implemented, and performed the conduct alleged herein.

17.     Defendants' tactics have been very successful and lucrative.   In the third quarter of 2019 alone, consumers booked $25.3 billion worth of gross travel bookings through all of parent Booking Holding's properties such as agoda.com and the Agoda app.

18.     At all relevant times, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego, and/or in furtherance of the joint venture.   Each of the Defendants' acts alleged here was done with the knowledge, permission and consent of each of the other Defendants.

## **FACTUAL ALLEGATIONS**

19.     For as long as humans have been trying to sell things to each other, some have been using sharp and slimy tactics to do so.   The internet did not really change this, it just made it easier.

20.     One of the most effective techniques has always been for a seller to offer customers a purported discount for an item, creating the impression of a "bargain." Numerous studies agree. For example, Dhruv Grewal and Larry D. Compeau's "Comparative Price Advertising: Informative or Deceptive?", 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) concludes that "[b]y creating an

impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."   See also, Compeau & Grewal, "Comparative Price Advertising: Believe It Or Not", J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) ("decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal" … "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."); Joan Lindsey-Mullikin, "The Impact of External Reference Price On Consumer Price Expectations," 79 J. of Retailing 225 (2003), ("research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."); Dr. Jerry B. Gotleib & Dr. Cyndy Thomas Fitzgerald, "An Investigation Into the Effects of Advertised Reference Prices on the Price Consumers Are Willing To Pay For the Product," 6. J. of App'd Bus. Res. 1 (1990) ("consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price.").

21.   When the discounts listed by the seller are genuine – where the buyer really is getting an item for a lower price than the one at which it is ordinarily sold – then the "bargain" promised in a seller's advertising and perceived by the consumer may be real.  This, however, is not such a case.

22.   Instead, this case involves, in part, a tactic designed to trick consumers into thinking they are getting a bargain.  One way Defendants did this is by using fake former prices which do not reflect the real price at which the rooms in question are or were rented.

23.   More specifically, Defendants routinely publish fake discounts including by showing fake original prices, which they then slash through with a red line before, and directly adjacent to, listing the supposedly discounted price.  For example, here is a representative screenshot of what a visitor to the agoda.com

website or app, like Plaintiff, would typically see prominently displayed before purchasing:



24.     The $221 alleged original price, though, is completely fake and is intentionally used to create a false sense of discounting in the mind of the reasonable consumer.  That room was never actually offered or sold for $221 on that date and never was going to be sold for $221 on that date.  No one actually paid $221.

25.     One way we know that the $221 "original price" is completely made up is because the same Defendant will sometimes publish the same offer for the same date, using the *same* agoda.com website, at the *same* time, but using a *different* or slightly different fake "original price."  For example, below is another offer for the same exact property (Mandalay Bay Resort in Las Vegas, NV),  for the same dates, that was searched using the same computer at the same time, by the same person, but just using two different browsers open at the same time (Chrome versus Internet Explorer):

45% OFF TODAY

Price per night as low as

~~100~~

$55

FREE CANCELLATION

26.     This is Defendants' common practice across agoda.com and the Agoda app for all its offerings.  Defendants routinely publish fictitious former or original prices and fake claims of "discounts" based on such prices in order to induce a sale. The former or original prices are never or almost never the price at which the rooms were truly offered or sold.  In other words, the former or regular prices were not used in the regular course of business, or were not used in the recent past, and/or they were not openly offered to the public or maintained for a reasonable length of time.  The former prices are not honest or in good faith.

27.     In actuality, the former or "original" prices listed are much higher than the prices at which the rooms are ordinarily rented by Defendants in the regular course of business.  In fact, the lower, purportedly discount prices are actually the true prices at which Defendants consistently and regularly rents the rooms. Therefore, the purported discount price is actually the real price.  In short, there is no discount and there never was.

28.     California law recognizes the abuses which can flow from claiming fake discounts.  See, e.g., *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013):

> "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price. Because such practices are misleading – and effective – the California legislature has prohibited them."

29.     Federal regulators agree.  16 C.F.R. Section 233.1 specifically prohibits the advertising of false, "phantom" price reductions and discounts off of inflated, fictitious "regular" prices that never actually existed.

30.     Moreover, Defendants routinely package their fake discounts with an equally fake sense of popularity or urgency to further induce the sale.  For example,

AMENDED CLASS ACTION COMPLAINT

and as we can see with the typical example above, Defendants routinely misrepresent that the (fake) discount is only available for a short time, or even only for "TODAY" (emphasis by Defendants).  That is false and deceptive and the true facts – which Defendants omit – are that the final price ($55 in the example above) is the real price and it will be available in the future as well, not just "TODAY."

31.    Finally, and as a matter of standard policy and procedure, Defendants further establish the fake sense of urgency or popularity by mispresenting that only a specific number of rooms are left.   Here are typical examples of this urgency/popularity tactic, combined with a phony discount:



32.    This representation of urgency or scarcity is also false and deceptive and the true facts – which Defendants omit – are that there are many more rooms available, at comparable prices, than Defendants are claiming.

33.    To summarize, Defendants here do at least two things wrong: (1) they represent a false discount without disclosing that the advertised price is and was the *only* price; and (2) they create a false sense of urgency and popularity by claiming that the (fake) discount is only available for a limited amount of time (typically "TODAY" only), and/or only in limited quantities.   All methods, either by themselves or together, are false and/or likely to deceive the reasonable consumer.

34.    Plaintiff and the Class Members have been and will continue to be deceived by Defendants' false and deceptive practices regarding advertising of rooms.  Plaintiff read and considered these representations and based his decision to

AMENDED CLASS ACTION COMPLAINT

book through Defendants' Agoda brand – and incur its fees – on these representations during the class period, including in 2019 and 2020.

35.   Plaintiff, specifically, engaged with Defendants via the Agoda app. There, he encountered Defendants' routine practice of publishing fake or phantom discounts packaged with a false claim of urgency.  Defendants claimed that the room was discounted.  Defendants also listed the room's (fake) original price, but slashed through it per its typical practice, offering a misleading percentage "off" for a limited time only.

36.   Plaintiff was exposed to and saw Defendants' false advertising of discounts and urgency/popularity and in reliance thereon he completed his bookings.

37.   Defendants' advertising and marketing claims were a material factor in influencing Plaintiff and the Class Members' decisions to purchase.  This reliance was not only reasonable but was entirely intended by Defendants.

38.   These deceptive advertising, marketing, and sales practices were kept secret, and were affirmatively and fraudulently concealed from customers by Defendants throughout the Class Period. As a result of this unlawful, deceptive conduct, Plaintiff and the Class Members have suffered damages as set forth herein.

## **CLASS DEFINITION AND ALLEGATIONS**

39.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and on behalf of all members of the following class and subclass of similarly situated individuals:

Nationwide Class:

All U.S. citizens who used agoda.com or the Agoda smart app for hotel bookings, along with all other persons who used agoda.com or the Agoda smart app to book hotel rooms located in the United States.

California Subclass:

All California citizens who used agoda.com or the Agoda smart app for hotel bookings, along with all other persons who used agoda.com or the Agoda smart app to book hotel rooms located in California.

40.     Plaintiff reserves the right to supplement or modify the above class and subclass definitions as discovery and investigation continue, including at the time of moving for class certification.

41.     Numerosity.   On information and belief, the Nationwide Class and California Subclass (collectively, the "Class" or "Class Members") are each so numerous that joinder of all members of the Class is impracticable.   Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of consumers who have been damaged by Defendants' conduct as alleged herein.   The precise number of Class Members is unknown to Plaintiffs.   Class Members are readily ascertainable via credit and debit card transactions and Defendants' own records.

42.     Existence and Predominance of Common Questions of Law and Fact. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members.   These common legal and factual questions include, but are not limited to, the following:

    a.  what the uniform advertising, marketing and sales materials said;

    b.  whether and when Defendants ever sold items or offered items for a real discount;

    c.  the standardized formula and criteria by which Defendants created fake original prices;

    d.  whether Defendants' purported percentage-off discounts reflected actual savings or reductions;

    e.  whether Defendants deceptively advertised regular prices of hotel rooms as "discount" or "sale" prices;

    f.  the length of time Defendants engaged in the practices alleged herein;

    g.  whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

    h.  whether Defendants' alleged conduct violates public policy;

      i.   whether the alleged conduct constitutes violations of the laws asserted;

      j.   whether Plaintiff and the Class Members have sustained monetary loss and the proper measure of that loss; and

      k.   whether Plaintiff and the Class Members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

43.   <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class Members were injured through the uniform misconduct described above and were subject to Defendants' deceptive advertising. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

44.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

45.   <u>Superiority</u>.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding,

economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.   The Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

47.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and the Class Members.

48.   Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class Members. Unless an injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**FIRST CAUSE OF ACTION**
**Violation of the Unfair Competition Law ("UCL")**
**(Business & Professions Code § 17200, *et seq.*)**

49.   Plaintiff repeats and re-alleges the allegations contained in the Paragraphs above, as if fully set forth herein.

50.   Plaintiff brings this claim individually and on behalf of the California Subclass.

51.   Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have violated Business & Professions Code § 17200.

52.   In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200), as set forth more fully herein and/or omitting the true facts that were necessary to avoid deceiving consumers.

Defendants violated California Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(9), (13), (14) and (16); California Business & Professions Code §§ 17200 *et seq.*; and the common law. Furthermore, Defendants' above-described wrongful acts and practices are also "unlawful," as that term is used in the California Business and Profession Code, because they constitute actual and constructive fraud within the meaning of Civil Code §§ 1572 and 1573, as well as deceit, which is prohibited under Civil Code §§ 1709 and 1711.

53. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

54. Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding normal room rates, the amount of rooms left, and the available time of the offer, and thereby offended an established public policy, and engaged in unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55. As stated in this complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California, resulting in harm to consumers throughout the United States. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

56. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

57. Business & Professions Code § 17200 *et seq.*, also prohibits any "fraudulent business act or practice."

58.     Defendants' actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200 *et seq.*

59.     Defendants' advertising as described herein also constitutes unfair, deceptive, untrue and misleading advertising.

60.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members and to the public. Plaintiff and Class Members have suffered injury in fact and have lost money as a result of Defendants' unfair conduct.

61.     As a result of its deception, Defendants have been able to reap unjust revenue and profit.

62.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief, including public injunctive relief, is appropriate.

63.     Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, as allowed under the UCL.

**SECOND CAUSE OF ACTION**
**Violation of the False Advertising Law**
**(Business & Professions Code § 17500,** *et seq.***)**

64.     Plaintiff re-alleges and incorporates by reference all previous paragraphs of the Complaint as if set forth fully herein.

65.     Plaintiff brings this claim individually and on behalf of the California Subclass.

66.     By the acts alleged herein, Defendants have publicly disseminated untrue or misleading advertising and have intended not to sell the items as advertised, in violation of the FAL.  Specifically, Defendants:

    a. Falsely claimed that rooms were being offered or sold for a "discount," "sale" price, or words to similar effect;

    b. Set and advertised an arbitrary base price for rooms, which price was represented to be the rooms' former, original, and/or regular price despite the fact that such rooms were not rented or offered for rent at those prices for any substantial period of time;

    c. Failed to disclose that the "discounted" sale prices did not actually represent the advertised savings since the rooms were not offered for sale at their purported base prices for any substantial period of time;

    d. Failed to disclose that the rooms were actually being offered for sale at the everyday, regular prices at which Defendants routinely rented the rooms;

    e. Charged their customers the full, regular price for the rooms rather than at the advertised discount;

    f. Represented that an arbitrary, limited number of rooms were available;

    g. Represented that the offers presented were only available for a limited period of time.

67.     Defendants committed such violations of the FAL with actual knowledge that their advertising was untrue or misleading, or in the exercise of reasonable care should have known that their advertising was untrue or misleading.

68.     Plaintiff and the Class Members reasonably relied on Defendants' representations or omissions made in violation of the FAL.

69.     As a direct and proximate result of these violations, Plaintiff and the Class Members suffered injury in fact and lost money.

70.    Plaintiff, individually and on behalf of the Class Members, seeks equitable relief in the form of an order requiring Defendants to refund Plaintiff and all Class Members all monies they paid for the purported discounted rooms they purchased from Agoda's website and mobile app, and injunctive relief in the form of an order prohibiting Defendants from engaging in the alleged misconduct.

## THIRD CAUSE OF ACTION
### Violation of Business & Professions Code § 17501

71.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

72.    Plaintiff brings this claim individually and on behalf of the California Subclass.

73.    Under Business & Professions Code Section 17501, "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."

74.    Violations of the UCL and the FCL constitute occurrences where a seller employs a reference price with regard to a specific product on any given day in an amount higher than that which it actually offered and sold the product for a majority of the days on which it was offered during the preceding 90 days.

75.    Pursuant to 4 California Code of Regulations Section 1301, "The term 'former price' as used in Section 17501 … includes but is not limited to the following words and phrases when used in connection with advertised prices: 'formerly,' 'regularly,' 'usually,' 'originally,' 'reduced from ___,' 'was ___ now ___,' '__% off.'"

76.    Section 17501 provides that when advertising a product with a representation of a former price, the seller is compelled to either use a reference price representing the "prevailing market price … within three months next

immediately preceding the publication of the advertisement," or alternatively make a disclosure that identifies "clearly, exactly and conspicuously," when the former price prevailed, and in this way is narrowly tailored to ensure that the information communicated by the seller to the consumer is truthful and not misleading or deceptive.  Defendants have previously violated Section 17501 by failing to satisfy either option provided for complying with the statute.

77.   As alleged herein, Defendants have advertised purported former prices that were not the prevailing market prices for the rooms within the three months immediately preceding such advertisements.   Similarly, Defendants failed to "clearly, exactly and conspicuously" identify to consumers when, if ever, the advertised reference prices did prevail.  In fact, Defendants provided no indication at all to consumers regarding whether and to what extent the advertised reference prices were offered.

78.   Defendants committed such violations of Section 17501 with actual knowledge that their advertising was untrue or misleading, or in the exercise of reasonable care should have known that their advertising was untrue or misleading.

79.   Plaintiff and the Class Members reasonably relied on Defendants' representations and omissions made in violation of Section 17501.

80.   As a direct and proximate result of these violations, Plaintiff and the Class Members suffered injury in fact and lost money.

81.   Unless restrained by this Court, Defendants will continue to engage in violations of Section 17501.

82.   Plaintiff, individually and on behalf of the Class Members, seeks equitable relief in the form of an order requiring Defendants to refund Plaintiff and all Class Members all monies they paid for the purported discounted rooms they rented on Defendants' website and mobile app, and injunctive relief in the form of an order prohibiting Defendants from engaging in the alleged misconduct.

### FOURTH CAUSE OF ACTION
**Breach of Contract**

83.     Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of all classes and subclasses.

85.     Plaintiff and the Class Members entered into contracts with Defendants.

86.     The contracts provided that Plaintiff and the Class Members would pay Defendants for hotel rooms.

87.     The contracts further provided that Defendants would provide Plaintiff and the Class Members a discount on the price of their purchases, or on "sale." This discount was a specific and material term of each contract.

88.     Plaintiff and the Class Members paid Defendants for the rooms that they purchased and satisfied all other conditions of the contracts.

89.     Defendants breached the contracts with Plaintiff and the Class Members by failing to comply with the material term of providing the promised discount, and instead charged Plaintiff and the Class Members the full price of the rooms that they purchased. Defendants further breached the covenant of good faith and fair dealing implied in all the contracts it had with Plaintiff and his fellow consumers.

90.     As a direct and proximate result of Defendants' breaches, Plaintiff and the Class Members have been injured and have suffered actual damages in an amount to be established at trial.

### FIFTH CAUSE OF ACTION
**Breach of Express Warranty**

91.     Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of all classes and subclasses.

AMENDED CLASS ACTION COMPLAINT

93.   Plaintiff and the Class Members formed contracts with Defendants at the time they rented rooms on Defendants' website and mobile app.  The terms of such contracts included the promises and affirmations of fact made by Defendants through their marketing campaign, as alleged herein, including, but not limited to, representing that the rooms for sale on Defendants' website and mobile app were discounted, limited in number, and only available for a limited amount of time.

94.   This advertising campaign constitutes express warranties, and became part of the basis of the bargain, and was part of the contract between Defendants and Plaintiff and Defendants and the Class Members.

95.   The affirmations of fact made by Defendants were made to induce Plaintiff and the Class Members to rent hotel rooms from Defendants' website and mobile app.

96.   Defendants intended that Plaintiff and the Class Members would rely on those representations in renting rooms, and Plaintiff and the Class Members did so.

97.   All conditions precedent to Defendants' liability under these express warranties have been fulfilled by Plaintiff and the Class Members in terms of paying for the rooms at issue or have been waived.  Defendants had actual and/or constructive notice of their own false advertising, marketing, and sales practices but to date have taken no action to remedy their breaches of express warranty.

98.   Defendants breached the terms of the express warranty because the items purchased by Plaintiff and the Class Members did not conform to the description provided by Defendants – that they were being sold at a discounted price.  In fact, they were not.

99.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and the Class Members have been injured and have suffered actual damages in an amount to be established at trial.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment/Quasi Contract

100.   Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

101.   Plaintiff brings this claim individually and on behalf of all classes and subclasses.

102.   Plaintiff and his fellow Class members conferred benefits on Defendants by paying booking prices and fees that were deceptively and illegally marketed.

103.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and his fellow consumers as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiff all members of all classes and subclasses.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge or collect those fees.  Defendants' retention of those monies has caused injuries to Plaintiff and his fellow consumers because they should not have had to pay those monies and they would not have paid those monies if they had known it was illegal to charge them.

104.   Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff his fellow consumers is unjust and inequitable, Defendants must pay restitution to Plaintiff and all class and subclass members for Defendants' unjust enrichment, as ordered by the Court.

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, request award and relief as follows:

1.     Certifying the Class and Subclass as requested herein;

2.     Awarding Plaintiff and the proposed Class Members damages;

3.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed Class Members;

4.     Awarding declaratory and injunctive relief, including public injunctive relief, as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

5.     Ordering Defendants to engage in a corrective advertising campaign;

6.     Awarding attorneys' fees including under the public benefit doctrine and/or the common fund doctrine;

7.     Award costs of suit; and

8.     Providing such further relief as may be just and proper.

Dated:  August 17, 2020                    **NICHOLAS & TOMSEVIC, LLP**

                                    By:    */s/ Alex Tomasevic*
                                           Craig M. Nicholas (SBN 178444)
                                           Alex Tomasevic (SBN 254498)

                                           **PHELPS LAW GROUP**
                                           Marc Phelps (SBN 237036)

                                           **THE CARTER LAW FIRM**
                                           Roger R. Carter (SBN 140196)
                                           Bianca A. Sofonio (SBN 179520)

                                           *Attorney for Plaintiff*

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a trial by jury on all causes of action and/or issues

3   so triable.

4

5   Dated:  August 17, 2020                      **NICHOLAS & TOMSEVIC, LLP**

6                                        By:    */s/ Alex Tomasevic*

7                                               Craig M. Nicholas (SBN 178444)
                                               Alex Tomasevic (SBN 254498)
8

9                                               Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28